STATE OF CONNECTICUT *v.* BENJAMIN PEARSALL
(14801)

Foti, Schaller and Shea, Js.

Argued October 2, 1996—officially released January 7, 1997

*Lawrence S. Dressler,* for the appellant (defendant).

*Christopher T. Godialis,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *David P. Gold,* supervisory assistant state's attorney, and *Dennis O'Connell,* legal intern, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of first degree manslaughter in violation of General Statutes § 53a-55. He claims that the trial court improperly (1) instructed the jury on the duty to retreat in defense of person, (2) instructed the jury on defense of premises and (3) failed to instruct the jury that the defendant need not retreat from the curtilage of his dwelling. We affirm the judgment of conviction.

The following facts are relevant to this appeal. On the afternoon of July 16, 1992, the defendant and Martha Moore drove toward an apartment located at 117C Brookside Avenue in New Haven.[1] As the defendant and Martha Moore approached 117C Brookside Avenue, they saw the victim, Luther Moore, Martha Moore's

---

[1] The defendant and his brother claim that he resided at the apartment, while Martha Moore claims that the defendant lived with his mother. The state conceded, however, that the defendant was at least a guest at 117C Brookside Avenue.

brother, and three of his friends. In order to avoid conflict, the defendant turned the car around in the parking lot and pulled back out onto Brookside Avenue. The victim and his friends got into their car and followed at a close distance. After driving a short way, the defendant decided to return to the apartment. Upon arriving at 117C Brookside Avenue, the defendant ran into the apartment. On her way into the apartment, Martha Moore walked past the victim's car, which was pulling into the driveway. The victim got out of his car, walked toward the front door of the apartment and asked the defendant to come outside and talk.

Subsequently, the defendant agreed to carry on a brief conversation through the locked screen door of the apartment. Martha Moore remained on the first floor, with the defendant, during the conversation. Throughout the discussion, the victim continued to ask the defendant to come out of the apartment and talk, but the defendant refused. When the conversation ended, Martha Moore went to an upper floor of the apartment. The defendant then closed the large inside door and telephoned his brother, Donald Woodson, and asked him to come to 117C Brookside Avenue.

The versions presented by the state and the defendant, of the events that followed, differed substantially. The defendant testified that his brother arrived at 117C Brookside Avenue shortly after receiving the telephone call. Upon seeing his brother pull into the driveway, the defendant unlocked the screen door, turned toward the stairwell and called up to ask Martha Moore to come downstairs. When the defendant turned back toward the screen door, the victim opened the unlocked screen door with his right hand and reached inside the open door to grab the defendant with his left hand. The victim stepped into the doorway so that the screen door closed behind him or rested on his back. The victim and the defendant wrestled briefly inside the foyer of

the apartment. During the scuffle, the victim pulled out a gun. Upon seeing the gun, the defendant grabbed the inside door and slammed it against the victim's arm. The knob of the door hit the victim in the wrist, causing him to drop the weapon. The defendant picked up the gun, and the victim held on to the defendant's arm. The victim grabbed for the gun, and the defendant shot him three times. The defendant testified at trial that he and the victim were inside the apartment at the time of the shooting.[2]

The state presented a different version of the shooting through the testimony of a disinterested witness, Vivian Pittman-Latham. At the time of the incident, Latham resided at 115B Brookside Avenue, across the parking lot from 117C Brookside Avenue. While Latham was inside her apartment, she heard loud voices and went to her doorway to observe the commotion. Latham testified that she saw a man, later identified as the victim, standing on the cement stoop of 117C Brookside Ave-

---

[2] The following colloquy between the assistant state's attorney and the defendant occurred during cross-examination:

"[Assistant State's Attorney:] Luther turned around with you standing there with a gun?

"[The Defendant:] His neck. He said, Tyrone. He was trying to fake me to look or something, and he reached for the gun and at that point I started firing.

"[Assistant State's Attorney:] He was still holding you, right, with his left hand?

"[The Defendant:] Yes. I think that's how the bullet got into the floor because I just blanked and I started firing.

"[Assistant State's Attorney:] So you and Luther were both standing kind of close in that little—when I say, foyer, do you know what I mean by that? I don't want—

"[The Defendant:] No.

"[Assistant State's Attorney:] The little area kind of at the base of the stairs inside. Do you have those pictures there so you know what I am talking about?

"[The Defendant:] I can show you.

"[Assistant State's Attorney:] Pull out the one that has the photo of the door.

"[The Defendant:] This is the inside. We were inside."

nue. She observed the defendant come to the screen door and remain inside the apartment. Latham could see that the screen door of 117C Brookside Avenue was ajar, and, at one point, she saw the victim reach inside. Latham saw the defendant leave the doorway briefly, then reappear and put his arm out through the screen door. The witness saw flashes and then observed the victim as he "stepped back off the porch, and then fell forward." According to Latham, no struggle or grabbing preceded the shooting.

The defendant claims that the trial court improperly instructed the jury on self-defense.[3] He asserts that the trial court's instructions misrepresented his duty to retreat and misled the jury regarding the defendant's right, as a visitor or guest, to defend the premises. In addition, he claims that the instructions were incomplete because they failed to take into account the curtilage of his dwelling.

The defendant raises this claim for the first time on appeal. To preserve a challenge to the jury charge, the defendant must make a written request to charge, or take exception to the jury instructions when they are

---

[3] The court instructed the jury that " '[a] person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating, except that the actor shall not be required to retreat if he is in his dwelling.'

\* \* \*

"Now you know there are two questions of fact for you to decide in considering these instructions of law. The first is whether the victim . . . was a trespasser. You will recall the testimony of Ms. Pittman-Latham that [the victim] was outside and the [defendant's] hand came out the door. [The victim] was out on the stoop, as opposed to the testimony of the defendant, that the [victim] came inside. So there is a question of fact and a question of credibility which you will have to resolve in terms of whether [the victim] was a trespasser, and also there is a question as to whether this was the defendant's dwelling. . . . As you have heard the testimony of Ms. Martha Moore that it was not. Of course, you heard the testimony from the defendant and from his brother . . . that it was [the defendant's] dwelling. So those are questions of fact for you to resolve in terms of self-defense."

given by the trial court. *State* v. *Miller*, 186 Conn. 654, 657, 443 A.2d 906 (1982). This court is not bound to review claims of instructional error if the party raising the claim neither submitted a written request to charge, nor excepted to the charge given by the trial court. Practice Book § 852.[4] "The purpose of the rule [§ 852] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." *State* v. *Packard*, 184 Conn. 258, 281, 439 A.2d 983 (1981).

Acknowledging that his claim is unpreserved, the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). "[B]ecause jury instructions that misstate the statutory defense of self-defense violate a defendant's fourteenth amendment right to establish a defense"; *State* v. *Jones*, 39 Conn. App. 563, 567, 665 A.2d 910, cert. denied, 235 Conn. 931, 667 A.2d 800 (1995); the defendant's claim is reviewable under the precepts of *State* v. *Golding*, supra, 239–40.[5]

---

[4] Practice Book § 852 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

[5] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 631–32 n.5, 685 A.2d 336 (1996).

At the outset, we note that under the third prong of *Golding*, "a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled." (Internal quotation marks omitted.) *State* v. *Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993). "In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 39 Conn. App. 569. "The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Ash*, 231 Conn. 484, 494, 651 A.2d 247 (1994). Furthermore, "[a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 509, 659 A.2d 1194 (1995); see *State* v. *Usry*, 205 Conn. 298, 316, 533 A.2d 212 (1987).

In the present case, the trial court clearly explained each element of self-defense,[6] when the use of deadly

---

[6] The trial court charged as follows: " 'A person is justified in using reasonable force upon another person to defend himself from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose. Except that deadly physical force may not be used unless the actor reasonably believes that such other person is using or about to use deadly physical force, or inflicting or about to inflict great bodily harm.' "

force is warranted,[7] and the duty to retreat in lieu of using physical force.[8] In addition, the court informed the jury of the defendant's right to defend the premises, as a resident and as a visitor or guest, and explained the use of deadly physical force in defense of premises. Upon our review of the entire charge, we conclude, therefore, that the trial court's instruction is constitutionally adequate.

The defendant also contends that the trial court improperly failed to instruct the jury that the defendant need not retreat from the curtilage of his dwelling. Indeed, the trial court did not provide such an instruction. We need not consider whether such an instruction was appropriate, however, because both the state's and the defendant's versions of the facts place the defendant inside the dwelling at the time of the shooting. Therefore, even if we were to determine that a curtilage exception exists, it would not apply in this case.[9]

We conclude that because the defendant cannot satisfy the third prong of *Golding*, that an alleged constitutional violation clearly exists and clearly deprived him of a fair trial, he cannot prevail on his claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The trial court gave the following charge: "Deadly physical force may not be used unless the actor, meaning the defendant, reasonably believes that such other person, meaning the victim in this case, Luther Moore, is using or about to use deadly physical force or inflicting or about to inflict great bodily harm on him."

[8] The trial court properly instructed the jury on duty to retreat in defense of person because an issue in the case was whether 117C Brookside was the defendant's "dwelling" for purposes of General Statutes § 53a-19 (b).

[9] We note that neither party has provided the court with any authority, nor have we found any, to support the defendant's contention that the curtilage doctrine exists with respect to General Statutes §§ 53a-19 and 53a-100.