STATE OF CONNECTICUT *v.* ERIC AMADO
(AC 15176)

Lavery, Spear and Dupont, Js.

608

Argued February 16—officially released October 6, 1998

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*Susann E. Gill,* senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict,* state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. This appeal returns to us on remand from our Supreme Court. *State* v. *Amado,* 242 Conn. 906, 697 A.2d 368 (1997). In *State* v. *Amado,* 42 Conn. App. 348, 363, 680 A.2d 974 (1996), we concluded that the defendant's two felony murder convictions were proper and that they provided a sufficient predicate for his capital felony conviction.

In *State* v. *Johnson,* 241 Conn. 702, 721, 699 A.2d 57 (1997), our Supreme Court reversed a capital felony conviction where felony murder was the predicate. The *Johnson* court relied on *State* v. *Harrell,* 238 Conn. 828, 839, 681 A.2d 944 (1996), for the proposition that "the term 'murder' in the capital felony statute [General Statutes § 53a-54b] may be applied only to intentional murder." *State* v. *Amado,* supra, 42 Conn. App. 348, was remanded to us for reconsideration in light of *State* v. *Johnson,* supra, 702. We now reverse the judgment of the trial court on the capital felony count as well as on the intentional murder counts.

The defendant, Eric Amado, appealed[1] from a judgment of conviction, rendered after a jury trial, of capital felony in violation of § 53a-54b (8),[2] two counts of intentional murder in violation of General Statutes § 53a-54a

---

[1] Our Supreme Court transferred this case to us in accordance with General Statutes § 51-199 (c), which provides: "The Supreme Court may transfer to itself a cause in the Appellate Court. Except for any matter brought pursuant to its original jurisdiction under section 2 of article sixteen of the amendments to the Constitution, the Supreme Court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the Appellate Court. The court to which a cause is transferred has jurisdiction."

[2] General Statutes § 53a-54b provides in relevant part: "Capital felony. A person is guilty of a capital felony who is convicted of any of the following

(a),[3] and two counts of felony murder in violation of General Statutes § 53a-54c.[4] The trial court merged the defendant's felony murder and intentional murder convictions into the capital felony conviction pursuant to *State* v. *Chicano*, 216 Conn. 699, 725, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991) (defendant's double jeopardy rights violated by conviction of and sentencing for two homicide offenses where legislature intended only one punishment).

The defendant asserts that (1) his convictions on the two felony murder counts are not sufficient to support a capital felony conviction, (2) the trial court improperly charged the jury that self-defense was inapplicable to felony murder and (3) the jury was improperly charged on the elements of self-defense,[5] thereby rendering

. . . (8) murder of two or more persons at the same time or in the course of a single transaction . . . ."

[3] General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . ."

[4] General Statutes § 53a-54c provides in relevant part: "Felony Murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he . . . causes the death of a person other than one of the participants . . . ."

[5] General Statutes § 53a-19 provides: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is

invalid his convictions on the two counts of intentional murder.

I

On reconsideration of the first issue, in light of the *Johnson* court's determination that a felony murder conviction cannot constitute the predicate for a capital felony conviction, we conclude that only the intentional murder convictions in this case could support the defendant's capital felony conviction. Consequently, we vacate our earlier determination affirming the capital felony conviction.

II

In *State* v. *Amado*, supra, 42 Conn. App. 348, we concluded that self-defense is *not* available as a defense to a charge of felony murder and, therefore, we did not address the claims of improper self-defense instructions. Although we decline the defendant's invitation

(1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

to revisit this issue with respect to the felony murder convictions, our vacating the capital felony conviction requires us now to address whether the jury was improperly charged on the issue of self-defense with respect to the intentional murder counts. The two felony murder convictions stand, as set forth in our original opinion. Those charges were not affected by the Supreme Court's opinion, which limited its finding and certified issue to the capital murder and felony murder counts.

Specifically, the defendant claims that the trial court's instructions on self-defense misled the jury because the court (1) improperly instructed the jury on the duty to retreat, (2) improperly focused on the victims' rights to use reasonable force in defense of their premises,[6] (3) improperly instructed the jury on the definition of reasonable force as that term applied to the defendant and (4) improperly defined how the jury should determine who was the initial aggressor. We agree with the defendant that the instructions on both the duty to retreat and the victims' rights to use reasonable force were improper and may have misled the jury in its consideration of the intentional murder counts.[7]

---

[6] General Statutes § 53a-20 provides: "Use of physical force in defense of premises. A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person as prescribed in section 53a-19, or (2) when he reasonably believes such to be necessary to prevent an attempt by the trespasser to commit arson or any crime of violence, or (3) to the extent that he reasonably believes such to be necessary to prevent or terminate an unlawful entry by force into his dwelling as defined in section 53a-100, or place of work, and for the sole purpose of such prevention or termination."

[7] Although we reverse the intentional murder convictions for improper instructions on the duty to retreat and the victims' rights, we discuss the third and fourth claims because the issues of reasonable force and initial

A full exposition of the facts that the jury reasonably could have found is recited in *State* v. *Amado,* supra, 42 Conn. App. 348. A summary of those facts will suffice here.

The defendant, accompanied by several other people, went to the home of Anthony Young in Bridgeport after the defendant received information that Young had taken a quantity of cocaine from the defendant's West Haven apartment. As the defendant stood on the porch of Young's home, Young opened the door. After accusing Young of having his cocaine, the defendant pulled out his gun and fired five shots, wounding both Young and Peter Hall, who was standing behind Young. Both men were alive when emergency medical personnel arrived at the house. Young was clutching a fully loaded magazine for an automatic weapon, and Hall was holding a small automatic pistol. Both men later died.

The defendant testified that as Young was denying complicity in the theft of the defendant's cocaine, Hall reached for the waistband of his trousers and started to draw a gun. The defendant claimed that he pulled his gun and fired into the house in self-defense only after Young had taken a step toward him and Hall had started to draw a gun from his waistband.

We agree with the state that except for his claim regarding the definition of "initial aggressor," the defendant did not properly preserve the claims of improper instruction that he now raises on appeal.[8] We agree with the defendant, however, that we should review his claims pursuant to *State* v. *Golding,* 213 Conn. 233,

---

aggressor will undoubtedly arise in the new trial. Even if those issues arise in a different fashion, our discussion should provide useful guidance to the trial court.

[8] The defendant neither took exception nor filed a request to charge as to the other issues that he now raises on appeal. In fact, his request to charge includes a reference to General Statutes § 53a-20, relating to defense of premises.

239–40, 567 A.2d 823 (1989).[9] The record is adequate for review and "[b]ecause jury instructions that misstate the statutory defense of self-defense violate a defendant's fourteenth amendment right to establish a defense . . . the defendant's claim is reviewable under the precepts of [*Golding*]." (Citation omitted; internal quotation marks omitted.) *State* v. *Pearsall*, 44 Conn. App. 62, 67, 687 A.2d 1301, cert. denied, 240 Conn. 910, 689 A.2d 473 (1997); see *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

It is well settled that "a defendant charged with a crime must be afforded the opportunity to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance

[9] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail."

of the jury." (Internal quotation marks omitted.) *State v. Rodriguez*, 47 Conn. App. 91, 95, 702 A.2d 906 (1997), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998), quoting *State v. Silva*, 43 Conn. App. 488, 491–92, 684 A.2d 725 (1996), cert. denied, 239 Conn. 956, 688 A.2d 329 (1997).

Moreover, our Supreme Court has stated that "a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled." (Internal quotation marks omitted.) *State v. Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993). We must now determine whether the trial court's instructions on self-defense, considered as a whole, were such that it is reasonably possible that the jury was misled and the defendant was deprived of his constitutional right to present a defense.

A

Because the court's instructions and the defendant's claims regarding both the duty to retreat and the victims' rights to use reasonable force in defense of their premises are so intertwined, we will discuss them together. In *State v. Ash*, 231 Conn. 484, 499, 651 A.2d 247 (1994), our Supreme Court held that a trial court's instructions regarding the self-defense statute[10] incorrectly suggested to the jury that the statute permits the jury to measure a defendant's knowledge of his ability to retreat according to an objective standard of reasonableness rather than the subjective standard of his actual knowledge. Even though the trial court initially gave a correct instruction on the duty to retreat, the *Ash* court concluded that the trial court's subsequent misstatements of the law on the duty to retreat made it reasonably possible that the jury was misled and was not, therefore, harmless error beyond a reasonable doubt. Id. According to General Statutes § 53a-19 (b),

---

[10] See footnote 5.

"a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling . . . ." This section of the self-defense statute refers specifically to the duty to retreat *as it applies to a person's right to engage in self-defense.* Moreover, "[t]he statute requires *both* that a retreat in complete safety be available *and* that the defendant know of it." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ash,* supra, 492.

Here, the trial court did, in fact, refer to the necessity for the defendant to have actual knowledge that he could have retreated in complete safety.[11] On the other hand, the trial court instructed the jury that "the defendant would not have been justified in standing his ground against the threatened attack to fend it off if he could with complete safety avoid the confrontation by retreating. However, in considering whether the defendant could have retreated in safety the element of practicality must be considered." There was no mention of the actual knowledge requirement. In response to a note from the jury with questions regarding the elements of self-defense,[12] the court reinstructed that

[11] In its original instructions, the trial court stated: "A person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety. That's [the defendant's] position. You may not be [justified] in using deadly force if [the defendant] knew that he could avoid the necessity of using such by— with complete safety by, one, retreating, except that an actor who used force [would] not be required to retreat if he is in his dwelling or [if] he is at his place of work and was not the original or initial aggressor." On reinstruction, the court stated: "A person, the defendant, on the porch is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by, one, retreating, except that an actor, a person utilizing the defense of self-defense shall not be required to retreat when he is in his dwelling or [at] his place of work and was not the initial aggressor."

[12] The trial court recited the note as follows: "Judge, we would like further clarification regarding the elements of self-defense. Specifically, we are

as to the duty to retreat, "[t]he first obligation is to consider, 'Is it possible to retreat?' . . ." This instruction refers only to the objective possibility of retreat and not to the defendant's knowledge of an available means of safe retreat. At a later point in the reinstruction on the elements of self-defense, the court again referenced whether the defendant "knows that he can avoid the necessity of using such force with complete safety by, one, retreating . . . ." In the court's original charge, it gave the jury one instruction regarding retreat that incorporated the actual knowledge requirement, and several pages later a retreat instruction was given that did not mention actual knowledge. During its reinstruction on retreat, the court again gave an instruction that failed to mention the defendant's actual knowledge and instead referred only to the possibility of retreat. That instruction was followed shortly thereafter by an instruction that did, in fact, incorporate the actual knowledge requirement. Pursuant to the reasoning in *Ash*, we conclude that it was reasonably possible that this mixture of correct and incorrect instructions misled the jury.

The defendant also asserts that the trial court's instructions to the jury regarding the duty to retreat improperly addressed the victims' rights not to retreat from *their* dwelling within the context of defining the defendant's right to engage in self-defense. While we previously stated that we must consider the court's charge as a whole and that such instructions need not be perfect or technically accurate, the charge nonetheless must be sufficiently clear to guide the jury in properly viewing the circumstances solely from the defendant's

looking for clarification of, one, rights available to lawful residents of the house and, two, when would the right to self-defense apply to uninvited individuals who came on to the Williams Street property and, three, what would cause the residents of the house to believe that the defendant is an aggressor? Must they have weapons or is mere presence sufficient?"

perspective because the defendant is the person who is asserting self-defense. *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984); *State* v. *Corchado*, 188 Conn. 653, 663, 453 A.2d 427 (1982).

In the course of its original charge, the court instructed the jury: "Now, we all understand that we are here for the trial of [the defendant]. But the trial involves two people who are dead as well, so we have to take a look at both positions. . . . [The victims had] a right to be in that home and as such the law protects them from intruders, invaders, trespassers or anybody coming into the home that they do not want into that home even to the extent of using force to repel the persons attempting to come there. . . . The statute reads as follows: 'A person in possession or control of premises or a person who is licensed to be on those premises is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission . . . of a criminal trespass by [another] person.' " The court did add, however, that its foregoing discussion constituted only the perspective of the victims and did not relate to the defense of self-defense, which applied only to the defendant. Notwithstanding, we are persuaded that the jury was sufficiently misled into believing that it needed to consider the victims' rights to engage in defense of their premises within the context of evaluating the defendant's self-defense claim. Significantly, one of the several issues that the jury asked the trial court to clarify after its initial instructions involved the rights that would be available to lawful residents of the house. Because the right to engage in self-defense should properly center on only the defendant and his state of mind, and should not be confused with the rights of the victims, this request for clarification from the jury further

illustrates what we conclude was a misguided focus regarding the jury's evaluation of the self-defense claim.

The dwelling exception to the duty to retreat would have been relevant to the jury's consideration only if the dwelling had belonged to the defendant. Notwithstanding, the trial court improperly discussed the victims' self-defense rights with respect to *their* dwelling while it continued to charge the jury on the defendant's right to engage in self-defense. The defendant correctly asserts that "the jury never once heard an explanation of self-defense which did not contain [a] long elaboration on the rights of the victims, intertwined with the possibility of the defendant's rights." Because the court improperly interjected instructions as to the victims' rights to defend their premises,[13] we conclude that it is reasonably possible that the jury was misled as to the proper method by which it should have evaluated the defendant's self-defense claim; that is, by considering solely the defendant's perspective concerning the circumstances. See *State* v. *DeJesus*, supra, 194 Conn. 376.

B

The defendant claims that the trial court improperly instructed the jury on the definition of reasonable force as that term applied to the defendant. Specifically, the defendant maintains that the court's charge impermissibly required the jury to evaluate whether the defendant engaged in reasonable force by a solely objective standard when the requisite standard in Connecticut is a

---

[13] In the course of its response to the jury's request for clarification on the elements of self-defense, the court charged: "Now, the other matter that you must understand is that the occupant of the home has no obligation to retreat. When you are in your home and if you reasonably feel there's an attempt by someone to commit a trespass and you are concerned about the use of deadly physical force, you need not retreat. That is distinguished from the requirement when utilizing the defense of self-defense outside the presence of a home or workplace."

subjective-objective standard. First, the jury must determine whether the defendant did, in fact, reasonably believe that deadly force was necessary. *State* v. *Prioleau*, supra, 235 Conn. 284. If the jury so finds, it must then determine whether that subjective belief was objectively reasonable. Id. We disagree with the defendant's claim.

It is well established that "the correct standard regarding the test for the degree of force in self-defense is the subjective-objective one set forth in *State* v. *Corchado*, supra [188 Conn. 663]. In *Corchado* [our Supreme Court] noted that § 53a-19 focuses on the person, here the defendant . . . claiming self-defense. It focuses on what he reasonably believes under the circumstances and presents a question of fact . . . . This statutory emphasis upon the defendant further demonstrates the function of the jury in their evaluation of the self-defense claim." (Internal quotation marks omitted.) *State* v. *Anderson*, 227 Conn. 518, 533, 631 A.2d 1149 (1993). Further, our Supreme Court has concluded that "[t]he jury must view the situation from the perspective of the defendant. . . . [T]he defendant's belief ultimately must be found to be reasonable." *State* v. *DeJesus*, supra, 194 Conn. 389 n.13.

Here, the defendant argues that the court impermissibly substituted an objective standard for the subjective-objective standard by instructing the jury that the amount of force that is permissible in self-defense is "that which reasonably appears necessary." In the court's original instruction on the issue of reasonable force, it included the following language: "A person is justified in using reasonable physical force upon another person, that is [the defendant] against the others, to defend himself from what he reasonably believes to be the use or imminent use of . . . force . . . and he may use such degree of force which he reasonably believes to be necessary for that purpose except [that]

deadly physical force may not be used unless the actor, [the defendant], reasonably believes that such other person is one, using or about to use deadly physical force or, two, inflicting or about to inflict great bodily harm . . . ." One page later in the instructions, the court charged the jury that "the law is clear that the issue is what the defendant reasonably believed under the circumstances *as he saw them* . . . ." (Emphasis added.) Immediately after that statement, the court emphasized the necessity for the jury to consider "what the defendant reasonably believes at the time of the incident . . . what he reasonably believed under the circumstances as he saw them [and] . . . not the actual danger, but what reasonably appeared to . . . the defendant."

On reinstruction, the court charged: "The force that one may use in self-defense is that which reasonably appears necessary in view of all the circumstances of the case to prevent the impending injury and the heat of conflict . . . . The permissible degree of force used in self-defense depends upon that which is necessary under all the circumstances to prevent an impending injury." The defendant claims that this instruction possibly misled the jury into applying a solely objective test in considering reasonable force. We disagree.

The challenged instruction concluded the court's charge in response to the jury's request for clarification of the elements of self-defense. It was preceded by instruction that self-defense does not apply until "[self-defense] comes into the mind of an actor . . . because of conduct that he perceives." The court went on to charge, as to self-defense, that "[y]ou have to believe that from his point of view" and that self-defense "has to do with the perspective of the defendant on the porch." The court again stated that the jury should assess "what [the defendant] reasonably believes."

Although the challenged instruction, in isolation, could be construed as dictating a solely objective standard, our review of the charge, as a whole, persuades us that the trial court sufficiently instructed the jury with respect to reasonable force to consider what the *defendant* believed under the circumstances.

## C

The defendant finally claims that the trial court improperly instructed the jury on the definition of "initial aggressor" by limiting the jury to determining who was the first to use physical force.[14] The defendant challenges the following portion of the trial court's instructions to the jury on the issue of "initial aggressor": "The law further provides that the accused was not justified in using deadly physical force if . . . he was the initial aggressor. Black's Law Dictionary [defines] aggressor [as] one who first employs hostile force. The party who first offers violence or offense. He who begins a quarrel or dispute either by threatening or striking another. The law provides that the accused was not justified in using deadly physical force if . . . he was the initial aggressor unless he withdrew from the dispute and communicated that to the victims and [the victims] continued to press his use of physical force. These are factual questions for you to decide."

In *State* v. *Jimenez*, 228 Conn. 335, 341, 636 A.2d 782 (1994), our Supreme Court determined that the trial court improperly instructed the jury on the initial aggressor exception to the law of self-defense when it defined the initial aggressor as the first actor to use physical force. Specifically, the *Jimenez* court observed that "[r]ead according to its plain language, and as a whole, doubtlessly § 53a-19 contemplates that a person may respond with physical force to a reasonably perceived threat of physical force without becoming the

---

[14] See footnote 11 regarding "initial aggressor."

initial aggressor and forfeiting the defense of self-defense. Otherwise, in order to avoid being labeled the aggressor, a person would have to stand by meekly and wait until an assailant struck the first blow before responding. . . . Such a bizarre result could not have been intended by the legislature. The law favors a rational statutory construction and we presume that the legislature intended a sensible result." (Internal quotation marks omitted.) Id.

In *State* v. *Cartagena*, 47 Conn. App. 317, 321, 708 A.2d 964 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998),[15] we concluded that the trial court's isolated reference to the defendant as the "initial attacker or aggressor" did not make it reasonably possible that the jury was misled because the court properly instructed the jury, in the course of its charge on self-defense, that " '[t]he use of self-defense does not imply the right of attack in the first instance or in mere retaliation. By definition, self-defense means the use of defensive force. Therefore, a person claiming this right must act honestly and conscientiously and not from anger, malice or revenge. He must not provoke or intentionally bring the attack upon himself in order to provide an excuse to use force against another person.' "

Immediately before reading the dictionary definition of "aggressor," the trial court here instructed the jury that "[i]t is not necessary for the assailant to have actually struck a blow if it appears an attack is imminent to trigger the doctrine of self-defense." The court had earlier stated that "the claim of self-defense is not necessarily defeated if . . . in connection with such a demonstration of force as will induce a well-founded belief

---

[15] In *Cartagena*, correct jury instructions that were given on "initial aggressor" were contrasted with those that were previously given in *State* v. *Jimenez*, supra, 228 Conn. 338, which improperly instructed the jury on the initial aggressor exception to the law of self-defense as follows: "Thus, if you find proven beyond a reasonable doubt that the defendant was, in fact,

in the mind of a reasonable person that his adversary is on the eve of executing a threat and that his only means of escape from death or great bodily injury [is] to immediately defend himself against the *impending danger* [by] the use of whatever force is necessary to avert the *threatened peril.* If the accused believed the victims were . . . *about* to use physical force against him . . . or that [the victims] were *about* to inflict great bodily harm upon him, [the defendant] was justified in using deadly force." (Emphasis added.)

Unlike in *Jimenez*, where the trial court instructed that the initial aggressor was defined as the first person to use physical force, we are persuaded from our review of the charge, as a whole, that the court's instruction on the initial aggressor issue here was not so limited. The court explained that one could react to both impending peril and the threat of harm without becoming an initial aggressor, and the instructions that were given did not preclude the jury from finding that the defendant was not the initial aggressor.

In summary, we conclude that there is a reasonable possibility that the jury was misled by the court's instructions that referenced both the victims' rights to defend their dwelling and the defendant's right to engage in self-defense. The improper instructions were harmful because the entire case turned on self-defense, and the state has not demonstrated that the error was harmless beyond a reasonable doubt. Consequently, the defendant's convictions of the intentional murders cannot stand. Accordingly, the capital murder conviction must also be reversed because the intentional murders are the only possible predicate for the capital felony conviction.

The judgment is affirmed as to the felony murder counts; the judgment is reversed as to the conviction

the aggressor, meaning that he was the first to use physical force, then the state has succeeded in disproving the defense of self-defense."

on the intentional murder counts and the capital felony count and the case is remanded for a new trial on those counts.

In this opinion DUPONT, J., concurred.

LAVERY, J., dissenting. I agree with the majority that the defendant's conviction on two counts of felony murder stand as set forth in the original opinion. *State* v. *Amado*, 42 Conn. App. 348, 680 A.2d 974 (1996). The felony murder convictions were not a subject of the Supreme Court's remand, which was limited to a reconsideration of the defendant's felony murder convictions serving as the predicate murder for a capital felony conviction in light of its decision in *State* v. *Johnson*, 241 Conn. 702, 699 A.2d 57 (1997). I respectfully dissent, however, from the majority opinion's reversal of the judgment of conviction on the intentional murder counts and, accordingly, the capital felony count.

I

I disagree with the majority's conclusion that it was reasonably possible that the jury was misled by the trial court's instructions that referenced both the victims' rights to defend their dwelling and the defendant's right to engage in self-defense.[1]

I agree with the majority that the defendant's claims on appeal are unpreserved. As to the defendant's claim that the trial court's interjection of the victims' rights to defense of premises in the instruction on self-defense misled the jury, I disagree with the majority that the issue is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). While the record is adequate for review, the claim is not truly of constitutional magnitude.

[1] I agree with the majority that the trial court properly instructed the jury on the definitions of reasonable force and initial aggressor.

The majority, quoting *State* v. *Pearsall*, 44 Conn. App. 62, 67, 687 A.2d 1301, cert. denied, 240 Conn. 910, 689 A.2d 473 (1997), concludes that " '[b]ecause jury instructions that misstate the statutory defense of self-defense violate a defendant's fourteenth amendment right to establish a defense . . . the defendant's claim is reviewable under the precepts of [*Golding*].' " I agree with that statement of the law, but I disagree that that is the situation in this case. The claim raised by the defendant is that the trial court in its instruction on self-defense interjected an instruction on the victims' right to defend their property. The claim is not that the trial court misstated the statutory defense of self-defense, but that the court added to it and, in so doing, somehow misled the jury. The victims' right to defend their property is not an element of self-defense. Because the trial court instructed the jury on the elements of self-defense, I would conclude that this claim is not of constitutional magnitude alleging the violation of a fundamental right and, therefore, not reviewable under *Golding*.

Even if I were to assume that the claim satisfies the first two prongs of *Golding* and is reviewable, I would conclude that the claim fails under the third and fourth prongs of *Golding*.

"In examining a challenge to a trial court's instructions to a jury, we will look at the charge as a whole rather than consider particular language in isolation. See *State* v. *Palmer*, 206 Conn. 40, 46, 536 A.2d 936 (1988). 'It is well established that individual jury instructions are *not to be judged in artificial isolation*, but must be viewed in the context of the overall charge. *Cupp* v. *Naughten*, 414 U.S. 141, 146–47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Silano*, 204 Conn. 769, 773, 529 A.2d 1283 (1987); *State* v. *Dolphin*, 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985).' *State* v. *Palmer*, supra, 46. Thus, we consider the defendant's assertions that

the trial court's instructions were improper in light of the entire charge.

"A jury charge must be considered from the standpoint of its effect on the jury in guiding it to a proper verdict. *State* v. *Delgado*, 13 Conn. App. 139, 145, 535 A.2d 371 (1987). The court's instruction should give the jury a clear understanding of the issues presented, under the offenses charged and on the evidence presented. Id.; see also *State* v. *Villafane*, 45 Conn. App. 110, 115, 694 A.2d 802 [cert. denied, 241 Conn. 926, 697 A.2d 362] (1997)." *State* v. *Cummings*, 46 Conn. App. 661, 679, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997).

The defendant argues that "[t]he court's instructions repeatedly misled the jury by removing its focus from the defendant and instead causing it to contrast the victims' certain rights with rights the defendant may have had."

In its instruction on self-defense, the trial court began by instructing the jury that self-defense is a valid legal defense. The trial court then instructed the jury that while this trial involves the defendant, it also involves the two victims. The trial court stated that the evidence showed that the victims had a right to be in the home and then instructed the jury on the use of physical force in defense of premises tracking General Statutes § 53a-20. At the conclusion of that instruction, the trial court was careful to clarify to the jury that the § 53a-20 instruction applied to the victims and not to the defendant and that it was not self-defense.[2] The trial court then specifically stated that in this case, self-defense is the claim of the defendant and then proceeded to

---

[2] The trial court instructed: "Now, that applies to them (the victims). All right? That's not self-defense. Self-defense in this case is the self-defense claim that applies to the defendant."

instruct the jury on self-defense tracking General Statutes § 53a-19.

The jury sent the trial court a note seeking clarification on parts of the charge on self-defense.[3] In reinstructing the jury, the trial court again instructed on the victims' right to defend the premises in response to the jury's question. It should be noted that the defendant submitted his own request to charge on the substance of § 53a-20 in response to the jury's question and, therefore, contributed to the charge that he now claims improper.[4] The trial court continued in its reinstruction

---

[3] The note read as follows: "Judge, we would like further clarification regarding the elements of self-defense. Specifically, we are looking for clarification of, one, rights available to lawful residents of the house and, two, when would the right to self-defense apply to uninvited individuals who came on to the Williams Street property and, three, what would cause the residents of the house to believe that the defendant is an aggressor? Must they have weapons or is mere presence sufficient?"

[4] The defendant submitted the following request to charge in response to the jury's question concerning the defense of premises: "Yesterday, I provided you with various instructions regarding the use of force in defense of premises and self-defense. At this point I would like to instruct you further.

"A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes it is necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person as prescribed in § 53a-19, or (2) when he reasonably believes it is necessary to prevent an attempt by the trespasser to commit arson or any crime of violence, or (3) to the extent that he reasonably believes it necessary to prevent or terminate an unlawful entry by force into his dwelling as defined in [General Statutes] § 53a-100 . . . and for the sole purpose of such prevention or termination.

"You will note that the entire statute regarding the use of force in defense of premises is not applicable unless the person in possession or control or a person who is licensed or privileged to be on the premises reasonably believes it is necessary to prevent or terminate the commission of a criminal trespass by such other person in or upon such premises.

"It is important that I define for you the term criminal trespass. A person is guilty of criminal trespass when knowing that he is not licensed or privileged to do so enters or remains in a building.

"There is evidence in this case that the building identified as 505 Williams

and charged the jury on self-defense according to § 53a-19.

The trial court's charge correctly set forth the law regarding the use of force in defense of premises. The trial court was careful to tell the jury, both in its initial charge and in its reinstruction, that the principles involved in § 53a-20 apply to the victims, while self-defense concerned the defendant. I agree with the state that the trial court's charge did not "enlarge or diminish the jury's understanding of the defendant's prerogative to use force," nor, as the defendant claims, did it leave the jury with the impression that a trespasser has no right of self-defense.

I do not believe that the jury's knowledge of the victims' right to defend the premises in any way diminished their understanding of the defendant's right to self-defense. As I have noted, the trial court was careful

---

Street contains more than one apartment and the front door to at least one other apartment is located on the front porch. The porch area of 505 Williams Street is what can be referred to as a common area.

"Mere presence in or on the porch, a common area at 505 Williams Street, is not a criminal trespass. You will therefore have to consider whether the defendant's presence on the porch represented an attempt to unlawfully enter or remain in the [victim's] apartment.

"You have requested the court to respond to a question regarding whether mere presence at [the victim's] apartment made the defendant an aggressor.

"Mere presence at 505 Williams Street would not mean that [the defendant] was the initial aggressor.

"It is not necessary that the defendant be without fault or blame in this incident for him to rely upon the defense of self-defense. The fact that a person initiated the discussion does not by itself make him the aggressor. Acts that merely create the opportunity for conflict do not make a party an aggressor. Before one can be said to have invoked an attack or conflict within the rule that precludes the provoked act or conflict as self-defense, he must willingly and knowingly do some act after meeting his antagonist reasonably calculated to lead to a fracas or deadly conflict. State v. Timmons, 7 Conn. App. 457, 469–70, 509 A.2d 64 (1986) [appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987)].

"Your other questions are directed to the court's instructions on the defense of self-defense. I will now reread my charge on self-defense."

"Defendant requests the court to reread charge."

to specify that the instruction on the right to defend property applied to the victims and that the instruction on self-defense applied to the defendant and, more importantly, that the jury in this case was concerned with the defendant. Furthermore, the trial court delivered the instructions separate and apart from each other, not intermingled. The trial court's instruction and reinstruction did not confuse the jury or have an adverse impact on the jury's deliberations.

## II

The defendant also claims that the trial court improperly instructed the jury on the defendant's duty to retreat. Specifically, the defendant claims that the correct statutory language was "sandwiched between incorrect instructions," and that the charge "failed to place what the defendant did perceive before the jury, and rather allowed it to reject the claim of self-defense based upon a finding that he could have perceived an ability to retreat, or even to avoid the incident entirely, with complete safety."

In its initial charge to the jury, the trial court instructed the jury on self-defense according to § 53a-19, including a proper instruction on the duty to retreat, indicating that the defendant would not be justified in using deadly force if he knew he could avoid the necessity of using such force with complete safety. Later in the initial charge, the trial court repeated the duty to retreat instruction and failed to include the actual knowledge requirement. In its reinstruction, however, the trial court delivered a proper instruction on the duty to retreat.

The majority states that the trial court's reinstruction on retreat failed to include the defendant's actual knowledge, but then the court delivered a proper instruction on retreat. The majority claims that the following was an instruction on retreat: "The first obligation is to consider, 'Is it possible to retreat?' . . ." I

disagree that the trial court was delivering an instruction on retreat because the remainder of the trial court's sentence was, "and I will go through that for you again here this morning."[5] The trial court was merely telling the jury that it would deliver an instruction on the duty to retreat later in the course of its reinstruction. The trial court then did so, properly instructing the jury as required by § 53a-19 (b).

The majority relies on *State* v. *Ash*, 231 Conn. 484, 651 A.2d 247 (1994), in concluding that it was reasonably possible that the jury in this case was misled by the trial court's instructions on the duty to retreat. *Ash* is distinguishable from this case. In *Ash*, the trial court first stated the statutory language on the duty to retreat correctly. The trial court then made improper references to an objective standard and "by further instructing the jury to consider what avenues of retreat the defendant '*could* perceive' . . . rather than directing them to consider what the defendant *did* perceive, the trial court, at best, further muddied the jury's understanding of the proper subjective standard and, at worst, suggested to the jury that it could reject the defendant's claim of self-defense if it found he could have perceived, but did not actually *know*, that he could have avoided using deadly physical force in complete safety by retreating." (Emphasis in original.) Id., 496. There was no reinstruction given in *Ash*.

In this case, the trial court delivered a reinstruction to the jury that included a proper charge on the duty

___

[5] The trial court instructed: "Now, the other matter that you must understand is that the occupant of the home has no obligation to retreat. When you are in your home and if you reasonably feel there's an attempt by someone to commit a trespass and you are concerned about the use of deadly physical force, you need not retreat. That is distinguished from the requirement when utilizing the defense of self-defense outside the presence of a home or workplace. The first obligation is to consider, 'Is it possible to retreat?' and I will go through that for you again here this morning. I believe that should answer your first question."

to retreat and did not include, although the majority claims otherwise, an improper charge. Thus, any confusion that may have existed after the initial charge was clarified by the trial court's proper charge in its reinstruction.

Considering the jury charge from the standpoint of its effect on the jury in guiding it to a proper verdict; I cannot conclude that it was reasonably possible that the jury was misled or that an injustice resulted due to the charge. The trial court's instruction gave the jury a proper understanding of the defendant's self-defense claim under the circumstances of this case on the evidence presented.

I would affirm the judgment of the trial court.