HENRY SMITH, JR.

*v.*

STATE OF TENNESSEE

354 S. W. 2d 450.

(*Nashville,* December Term, 1960.)

Opinion filed October 20, 1961.

500

JOHN R. TUCKER, Memphis, for plaintiff in error.

GEORGE F. MCCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Henry Smith, Jr., was indicted for killing the proprietor of a liquor store in Memphis on September 2, 1960, while in the perpetration of a robbery with a pistol. The jury found him guilty and sentenced him to death by electrocution.

The contention here is that the evidence does not warrant death by electrocution and that the homicide was committed in self-defense. It is further the contention in support of the assignments that due to the unusual amount of publicity that this homicide had in the press, television and radio that the plaintiff in error had been unusually prejudiced thereby to such an extent that a reversal should be had. We have very carefully considered the matter, and after hearing oral argument, reading the briefs and record, and making an independ-

ent investigation of the authorities, now have the matter for disposition.

There is really no controversy about the facts. The facts show, as adduced from the evidence of eye witnesses and a statement made to the Memphis Police Force by the plaintiff in error, that the plaintiff in error came into Memphis from West Memphis on the morning of September 2, 1960, a little after eight o'clock, and needing "a little money" he decided to rob a liquor store and get "a little money out of it".

The plaintiff in error entered this store and found the proprietor (the deceased man) standing back of the counter next to the cash register. There was also at least one colored man in sight. There was likewise another colored man in this store around probably a u-shape who saw and heard most of what went on. These two colored men were employees of the store.

The plaintiff in error went up to the deceased who was back of the counter, and told him that he wanted some money. When he was informed by the deceased that he didn't have any money, the plaintiff in error contends, and the evidence does not preponderate to the contrary, and in fact it shows that at that time the plaintiff in error had pulled his gun on the proprietor and the proprietor in return had gotten a little pistol out from under the counter somewhere and snapped it once or twice at the plaintiff in error. As he did so the plaintiff in error shot the deceased in the breast, and as a result of this the proprietor eventually died that night because of the amount of blood that had poured out into his lungs.

After this shooting took place one of the two colored men who worked in the store got out and ran and called

the police. The other colored man went in another direction and did likewise. The plaintiff in error immediately after this homicide either got the money that was in the cash register or out of the pockets of the deceased and he likewise then left and roamed around the streets of Memphis until late in the afternoon when he was finally apprehended on one of the streets by two police officers of the City of Memphis. They found something over $200.00 on the plaintiff in error, all of which he said he secured in this robbery except some five or ten dollars which he had in his pocket. The plaintiff in error says it was rolled up in a roll of bills with a rubber band around it.

Section 39-3901, T.C.A., makes robbery with a deadly weapon subject to death by electrocution. Robbery is a felony. Section 39-2402, T.C.A., defines murder in the first degree. By this statute the killing of a human being is made murder in the first degree where it is committed in the perpetration of a robbery. Under this statute if the killing is done by the accused when engaged in the commission of a felony (robbery herein) it constitutes the offense of murder in the first degree, although the killing was casual and unintentional.

In Wharton on Homicide, 3rd Ed., sec. 119, page 174, the author of this book makes the following very apt statement to a factual situation as is shown by this record. The author says:

"Where a person is killed by another in perpetrating, or attempting to perpetrate, a felony or criminal act calculated to cause death, the premeditated intent to commit a felony or other criminal act is, by implication of law, transferred from that offense to the

homicide actually committed, so as to make the latter offense a killing with malice aforethought constituting murder in the first degree. In such case the turpitude of the criminal act supplies the place of deliberate and premeditated malice and is its legal equivalent and the purpose to kill is conclusively presumed from the intention which is of the essence of the criminal act intended. And such a murder is a murder in the first degree under such statutes, though it is casual and unintentional.''

■ The plaintiff in error immediately after his arrest while being questioned by the officers was asked why he killed this proprietor. He answered, according to the officer, ''Well, he shot him because he was going to shoot him.'' In other words this statement is the basic and practically the only serious defense that the plaintiff in error has. Such a defense though is not available. This Court considered a related matter in *Irvine v. State,* 104 Tenn. 32, 56 S.W. 845.

In the footnotes to Wharton, supra, at page 175, are a number of cases cited in support of the statement quoted from this work. Among the cases cited is that of *Cox v. People,* 80 N.Y. 500, affirming 19 Hun 430, in which according to the author, that court held that the law makes the killing of another while engaged in the commission of a felony, murder in the first degree, independent of all questions of motive, and the person who kills another while engaged in committing a felony cannot escape conviction from murder in the first degree, by showing that his intent was not to kill, but to defend his own life or person, or to escape arrest, or to avoid pursuit or death. This is a logical, reasonable and natural holding under our statutes referred to at the outset of

this opinion, wherein the conviction for armed robbery without death may be electrocution and wherein death ensues robbery is made murder in the first degree. Under such circumstances when one brings on the act by approaching another with a gun and demands money, he is not, should not, and cannot be in a position to say, ''Well, I killed him because I thought he was going to shoot me.'' He is the instigator and author and brings about the whole chain reaction, and thus cannot defend on this ground.

■ The argument is made that the killing or murder in this case was not done in pursuance of the robbery but collateral to it. We think that unquestionably this killing was done and is part of the *res gestae* of the whole acts embracing the robbery. It had a close and intimate connection with the felony and grew out of the attempt to commit the felony. Regardless of this fact under Section 39-3901, T.C.A., above referred to, the robbery with a gun could not warrant the same penalty that was meted out for the killing herein. We are convinced that this killing was not collateral to the robbery.

■ Lastly, the very able argument is made, which was made so well in oral argument, that the plaintiff in error was prejudiced by reason of the fact that this homicide was given so much publicity through local media for publicity purposes, and that therefore the verdict was biased or prejudiced. We cannot find anything in the record to support such an argument. Counsel frankly says there is no such thing in the record, but that we must take judicial knowledge of the fact that under these circumstances, the person killed, etc., that such would be true. Of course, we must take the record as we find it, and where there is nothing in the record

to show any such thing the presumption is to the contrary. We have no right to consider such a matter, because this is a Court of appeal and error and we are bound by the record as we find it. If such an argument could be made it can only be made to the Chief Executive Officer of the State, and it is not one that the Court can consider.

■ Another argument on behalf of the plaintiff in error is that one of the witnesses in testifying said, "* * * the Lord be, here is a negro shot a white man." (Tr. p. 70.) Thus by the use of the reference to the plaintiff in error as a negro and the dead man as a white man that this was inflammatory to such a degree that it incited the passions of the jury. We notice in the first place that the witness who made this statement is likewise a colored man—one of the two colored men working in the liquor store—and that the way it was done and all could not and certainly did not arouse the passionate instincts of the jury any more than their observation of such facts would have if they in themselves would arouse passions. We cannot conceive how this in any way injured or prejudiced the plaintiff in error. The jury is first sworn and, we feel sure, that they did in this case, because there is nothing to show to the contrary, determined the case on the evidence that they heard and the law (which it is conceded was perfectly charged) as charged to them by the court.

After very carefully reading this record, investigating the authorities, etc., we are convinced that there was no error herein, and thus it is that the judgment below must be affirmed. The time for electrocution is set for November 30, 1961.