### STATE OF CONNECTICUT *v.* ERIC AMADO
(SC 16058)

McDonald, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued March 23---officially released August 15, 2000

*Susann E. Gill*, senior assistant state's attorney, with whom were *Ellen A. Jawitz*, assistant state's attorney, and, on the brief, *Jonathan C. Benedict*, state's attorney, for the appellant-appellee (state).

*Lauren Weisfeld*, assistant public defender, for the appellee-appellant (defendant).

*Opinion*

MCDONALD, C. J. After a jury trial, the defendant, Eric Amado, was found guilty of two counts of murder in violation of General Statutes § 53a-54a,[1] two counts of felony murder in violation of General Statutes § 53a-54c,[2] and one count of capital felony in violation of General Statutes § 53a-54b.[3] The trial court merged the defendant's felony murder and intentional murder convictions into the capital felony conviction and sentenced the defendant to life imprisonment without the

---

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . ."

[2] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[3] General Statutes § 53a-54b provides in relevant part: "A person is guilty of a capital felony who is convicted of any of the following . . . (8) murder of two or more persons at the same time or in the course of a single transaction . . . ."

possibility of release pursuant to General Statutes § 53a-35a.[4] On appeal, the Appellate Court affirmed the judgment of conviction, concluding that the trial court properly determined that, as a matter of law, the defense of self-defense does not apply to a charge of felony murder.[5] *State* v. *Amado*, 42 Conn. App. 348, 362, 680 A.2d 974 (1996). We granted the defendant's petition for certification; *State* v. *Amado*, 242 Conn. 906, 697 A.2d 368 (1997); and remanded the case to the Appellate Court for reconsideration in light of *State* v. *Johnson*, 241 Conn. 702, 709, 699 A.2d 57 (1997), in which we held that a conviction for felony murder could not serve as a predicate felony for a conviction of capital felony. On remand, the Appellate Court reversed the intentional murder and capital felony convictions, concluding that the trial court improperly instructed the jury on the victims' right to use reasonable force in defense of premises pursuant to General Statutes § 53a-20,[6] and the defendant's duty to retreat pursuant to General Statutes

---

[1] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life imprisonment without the possibility of release unless a sentence of death is imposed . . . ."

[5] The Appellate Court did not reach the defendant's other claims regarding the trial court's instructions on the intentional murder charges because it found that the felony murder convictions supported the capital felony conviction. *State* v. *Amado*, 42 Conn. App. 348, 363, 680 A.2d 974 (1996).

[6] General Statutes § 53a-20 provides: "A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person as prescribed in section 53a-19, or (2) when he reasonably believes such to be necessary to prevent an attempt by the trespasser to commit arson or any crime of violence, or (3) to the extent that he reasonably believes such to be necessary to prevent or terminate an unlawful entry by force into his dwelling as defined in section 53a-100, or place of work, and for the sole purpose of such prevention or termination."

§ 53a-19 (b).[7] *State* v. *Amado*, 50 Conn. App. 607, 624, 719 A.2d 45 (1998). Because our remand was confined to the issue relating to our holding in *State* v. *Johnson*, supra, 702, the Appellate Court did not revisit its previous holding that, as a matter of law, self-defense does not apply to a charge of felony murder. Consequently, the defendant's felony murder convictions remain in effect, but he stands to receive a new trial on the intentional murder and capital felony counts. The state and the defendant both petitioned for certification to appeal to this court, and we granted both petitions.[8] We conclude that the trial court's instructions concerning the defendant's duty to retreat and the victims' right to use force in defense of premises did not constitute clear error of constitutional magnitude, and we reverse the Appellate Court's judgment in that respect. We also

---

[7] General Statutes § 53a-19 (b) provides: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform."

[8] We granted the state's petition for certification to appeal limited to the following issues: (1) "Did the Appellate Court properly conclude that the defendant was entitled to prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), on the trial court's instructions regarding General Statutes § 53a-20, concerning the use of force in defense of premises?" (2) "Did the Appellate Court properly conclude that the defendant was entitled to prevail under *State* v. *Golding*, [supra, 213 Conn. 233], on the trial court's instructions regarding the duty to retreat?" and (3) "If the answer to question one or two is yes, was either such improper instruction harmless in view of the affirmance of the defendant's convictions of two counts of felony murder?" *State* v. *Amado*, 247 Conn. 953, 953–54, 723 A.2d 811 (1999). We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the defense of self-defense does not apply to a charge of felony murder as a matter of law." *State* v. *Amado*, 247 Conn. 953, 723 A.2d 811 (1999).

conclude that the Appellate Court, in its earlier opinion, correctly determined that self-defense is not available as a defense to a charge of felony murder. We therefore reverse the judgment of the Appellate Court in part and affirm it in part.

The evidence that was before the jury is set forth in the first Appellate Court opinion; *State* v. *Amado*, supra, 42 Conn. App. 351–56; and need not be repeated in detail for purposes of this appeal. It is sufficient to note that the jury reasonably could have found the following: "The defendant, accompanied by several other people, went to the home of Anthony Young in Bridgeport, after the defendant received information that Young had taken a quantity of cocaine from the defendant's West Haven apartment. As the defendant stood on the porch of Young's home, Young opened the door. After accusing Young of having his cocaine, the defendant pulled out his [nine millimeter semiautomatic handgun] and fired five shots, wounding both Young and Peter Hall, who was standing behind Young. Both men were alive when emergency medical personnel arrived at the house. Young was [found] clutching a fully loaded magazine for an automatic weapon, and Hall was [found] holding a small automatic pistol. Both men later died [from their wounds].

"The defendant testified that as Young was denying complicity in the theft of the defendant's cocaine, Hall reached for the waistband of his trousers and started to draw a gun. The defendant claimed that he pulled his gun and fired into the house in self-defense only after Young had taken a step toward him and Hall had started to draw a gun from his waistband." *State* v. *Amado*, supra, 50 Conn. App. 613. Additional facts will be set forth as needed.

I

On appeal, the state claims that the Appellate Court improperly concluded that the defendant was entitled

to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), on his unpreserved claim regarding the trial court's instructions to the jury concerning self-defense, in particular, the defendant's duty to retreat and the victims' right to use reasonable force in defense of their premises. We agree with the state.

The following additional facts are relevant to this claim. During its instructions on the intentional murder and capital felony charges, the trial court initially charged the jury on the victims' right to use reasonable force in defense of premises under § 53a-20. The trial court explained to the jury that "we all understand that we are here for the trial of [the defendant]. But the trial involves two people who are dead as well, so, we have to look at both positions. . . . [T]he two guys Young and Hall in the house . . . they have a right to be in that home and as such the law protects them from intruders, invaders, trespassers or anybody coming into the home that they do not want into that home even to the extent of using force to repel the persons attempting to come there. . . . The statute reads as follows: A person in possession or control of premises . . . is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises. . . . That's the perspective of Young and Hall in that house. Under the law they have a right to remain there, they have a right to be armed in their house, they have a right to repel anybody that's coming by the utilization of force, even deadly force, if they reasonably believe that they are going to be subject to a violent act or it is necessary to repel the trespass which is eminent. Now, that applies to them. . . . That's not self-defense. Self-defense in this case is the self-defense claim that applies to the defendant."

The trial court then proceeded to instruct the jury as to the defendant's defense of self-defense with regard to the intentional murder charge.[9] The trial court charged the jury as to the defendant's duty to retreat under § 53a-19 (b). The court stated that "[a] person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety. . . . You may not be [justified] in using deadly force if [the defendant] knew that he could avoid the necessity of using such . . . with complete safety by, one, retreating, except that an actor who used force [would] not be required to retreat if he is in his dwelling . . . . Now, you have to put that in the context of this case. . . . The law is clear that the issue is what the defendant reasonably believes at the time of the incident. That is the issue. What the defendant reasonably believes at the time of the incident. The question is what he reasonably believed under the circumstances as he saw them but is not the actual danger but what reasonably appeared to be—to the defendant." The trial court later revisited the defendant's duty to retreat, stating that "[t]he defendant may not use deadly force even in self-defense unless he has no reasonable basis of avoiding the threatened injury in some other manner. The defendant would not have been justified in standing his ground against the threatened attack to fend it off if he could with complete safety, avoid the confrontation by retreating. However, in considering whether the defendant could have retreated in safety the element of practicality must be considered."

During deliberations, the jury requested clarification regarding the rights available to lawful residents of the house. The court recharged the jury on the substance

---

[9] The trial court, however, refused to instruct the jury on the defense of self-defense with regard to the defendant's charge of felony murder. See part II of this opinion.

of § 53a-20, noting that "[t]he statute . . . applies to the people that are within the house . . . ." In addition, the trial court stated that "the occupant of the home has no obligation to retreat. When you are in your home and if you reasonably feel there's an attempt by someone to commit a trespass and you are concerned about the use of deadly physical force you need not retreat. That is distinguished from the requirement when utilizing the defense of self-defense outside the presence of a home or workplace. The first obligation is to consider, is it possible to retreat . . . ." The trial court then instructed the jury that the defendant has a duty to retreat "if he knows that he can avoid the necessity of using such force with complete safety . . . . The law is clear that the issue is what the defendant reasonably believes at the time of the incident."

The Appellate Court held that, under *State* v. *Golding*, supra, 213 Conn. 239–40,[10] the defendant was entitled to prevail on his unpreserved claim that the trial court's instructions to the jury violated his constitutional right to present a defense. The Appellate Court stated that "[b]ecause the [trial] court's instructions and the defendant's claims regarding both the duty to retreat and the victims' rights to use reasonable force in defense of their premises are so intertwined, we will discuss them together." *State* v. *Amado*, supra, 50 Conn. App. 615.

---

[10] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) "The first two requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail." *State* v. *Woods*, 250 Conn. 807, 815, 740 A.2d 371 (1999).

Relying on *State* v. *Ash*, 231 Conn. 484, 651 A.2d 247 (1994), the Appellate Court majority concluded that "it was reasonably possible that th[e] mixture of correct and incorrect instructions [concerning the defendant's duty to retreat] misled the jury." *State* v. *Amado*, supra, 50 Conn. App. 617. The Appellate Court also concluded that "[b]ecause the court improperly interjected instructions as to the victims' rights to defend their premises . . . it is reasonably possible that the jury was misled as to the proper method by which it should have evaluated the defendant's self-defense claim; that is, by considering solely the defendant's perspective concerning the circumstances." Id., 619.

On appeal, the state argues that there is no reasonable possibility that the jury was misled by the jury charge because the court never contradicted itself as to the standard to be applied in analyzing the defendant's duty to retreat. Merely failing to repeat the subjective standard does not amount to a violation of the defendant's constitutional rights. The state also argues that the defendant's claim with regard to the victims' right to use force in defense of premises does not warrant reversal under *Golding*.

We reaffirm that "[a] fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . A defendant who asserts a recognized legal defense, the availability of which is supported by the evidence, is entitled as a matter of law to a theory of defense instruction." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson*, 227 Conn. 518, 526, 631 A.2d 1149 (1993).

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Ash*, supra, 231 Conn. 493–94.

The Appellate Court concluded that the trial court's failure to reiterate that the defendant must have actual knowledge that he can retreat safely may have confused the jury. We disagree. The trial court correctly instructed the jury that "[t]he law is clear that the issue is what the defendant reasonably believes at the time of the incident. . . . The question is what he reasonably believed under the circumstances as he saw them but is not the actual danger but what reasonably appeared to be—to the defendant." Although the trial court later revisited the defendant's duty to retreat[11] and did not repeat the subjective nature of the inquiry in its instructions to the jury, it subsequently gave another

---

[11] The trial court instructed the jury that "[t]he defendant may not use deadly force even in self-defense unless he has no reasonable basis of avoiding the threatened injury in some other manner."

instruction that, again, expressly put forth the appropriate standard. On recharge, the trial court reiterated that the defendant has a duty to retreat "if he knows that he can avoid the necessity of using such force with complete safety . . . . The law is clear that the issue is what the defendant reasonably believes at the time of the incident."

We conclude that there was not a reasonable possibility that the jury was misled because the trial court referred to the correct standard each time that it discussed the standard. This court's holding in *State* v. *Ash*, supra, 231 Conn. 484, is distinguishable. In *Ash*, the trial court misstated the law "when it instructed the jury to consider 'what was reasonable for the defendant to perceive was available as retreat' and to view the defendant's actions 'as you would perceive a reasonable person to view the same situation, under the same conditions.' " Id., 494–95. There we held that "[t]hese words incorrectly suggested that the statute permitted the jury to measure the defendant's knowledge of his ability to retreat according to an objective standard of reasonableness rather than the subjective standard of the defendant's actual knowledge." (Internal quotation marks omitted.) Id., 495. The trial court in *Ash* also misstated the law to the jury on recharge, through its "use of the words could perceive . . . rather than directing them to consider what the defendant did perceive . . . [that] further muddied the jury's understanding of the proper subjective standard. . . ." (Internal quotation marks omitted.) Id., 496. On appeal, we concluded that although "the trial court first stated the statutory language correctly. . . . [it was] subsequently clouded by the trial court's misstatements of law . . . ." Id., 495. As a result, this court held that it was reasonably possible that the jury, viewing the charge in its entirety, was misled by the combination of accurate and inaccurate language on the duty to retreat.

In the present case, the trial court never instructed the jury "to view the defendant's actions 'as you would perceive a reasonable person to view the same situation,' " and the jury was not led to believe that it should measure "the defendant's knowledge of his ability to retreat according to an objective standard of 'reasonableness' . . . ." Id. The trial court did not misstate the law with respect to the defendant's duty to retreat, as the trial court did in *Ash*, but merely failed to repeat the subjective standard with regard to the defendant's apprehension of an opportunity to retreat. Each time that the standard was discussed, however, the trial court properly referred to the subjective standard. We conclude that it was not reasonably possible that the jury was misled by these instructions.

The Appellate Court also concluded that the trial court's instruction on the victims' right to defend the premises may have misled the jury. We disagree. The trial court instructed the jury on the victims' right to defend the premises in order to inform the jury that the victims did not have the same duty to retreat as did the defendant. This instruction was necessary so that the jury could understand that the victims had the right to repel a forcible entry into their dwelling even with deadly force under certain circumstances. The jury's knowledge of such an instruction did not "in any way diminish their understanding of the defendant's right to self-defense . . . [because] the trial court was careful to specify that the instruction on the right to defend property applied to the victims and that the instruction on self-defense applied to the defendant . . . ." *State v. Amado*, supra, 50 Conn. App. 629–30 (*Lavery, J.,* dissenting). The trial court expressly separated its instruction regarding the victims' right to use force in defense of the premises from its instruction regarding the defendant's defense of self-defense. Immediately following its discussion of § 53a-20, the court noted,

"[n]ow, that [instruction as to the defense of premises] applies to [the victims]. . . . That's not self-defense. Self-defense in this case is the self-defense claim that applies to the defendant." The court then proceeded to discuss the defendant's defense of self-defense. The instruction regarding the victims' right to defend their property was separate and clearly did not affect the instructions concerning the defendant's right to the defense of self-defense. Moreover, the jury was instructed that the subjective standard applied to the person having the duty to retreat and that the victims defending their premises had no duty to retreat. We fail to see how the trial court's instructions could have led the jury to believe that it should consider a perspective other than that of the defendant in evaluating the claim of self-defense. Thus, we reverse the judgment of the Appellate Court on this issue.

## II

The defendant's claim on cross appeal is that the Appellate Court improperly held, as a matter of law, that a defendant accused of felony murder may not rely on a claim of self-defense. The defendant argues that, because the trial court refused to instruct the jury on self-defense with respect to the felony murder charges, he was deprived of his statutory right to use justification as a defense; General Statutes § 53a-19; and his constitutional rights to be presumed innocent, present a defense, due process and trial before a properly instructed jury. U.S. Const., amends. V, VI, XIV; Conn. Const., art. I, §§ 8, 19.[12] We disagree.

Whether self-defense applies to a charge of felony murder is a question of law. "This court has plenary review of the trial court's conclusions of law . . . ."

---

[12] The defendant has not provided an independent analysis of his state constitutional claim. Accordingly, we do not address that claim. See, e.g., *State* v. *Pinder*, 250 Conn. 385, 389 n.4, 736 A.2d 857 (1999).

(Citation omitted.) *State* v. *Webb,* 252 Conn. 128, 138, 750 A.2d 448 (2000).

The felony murder statute, § 53a-54c, provides in relevant part that "[a] person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

In *State* v. *Lewis,* 245 Conn. 779, 812, 717 A.2d 1140 (1998), we affirmed the trial court's refusal to give the jury an instruction on a claim of self-defense as to the defendant's intentional murder and felony murder charges, concluding that "[o]ne who commits or attempts a robbery armed with deadly force, and kills the intended victim when the victim responds with force to the robbery attempt, may not avail himself of the defense of self-defense. It has long been accepted that one cannot support a claim of self-defense by a self-generated necessity to kill. . . . In sum, one who is the aggressor in a conflict culminating in death cannot invoke the necessities of self-preservation." (Internal quotation marks omitted.) Id.

The defendant argues that this court's holding in *Lewis* did not establish a bright line rule that a claim of self-defense, as a matter of law, is not available to an individual charged with felony murder. The defendant argues that, because in *Lewis* we reviewed the evidence concerning the issue of whether the defendant was the initial aggressor pursuant to § 53a-19 (c), we implicitly limited its holding to the facts of the case and did not

hold that self-defense is unavailable to every defendant accused of committing felony murder. We disagree. Although, in *Lewis*, we reviewed the evidence concerning the determination of whether the defendant was the initial aggressor, we did so only because an instruction on a claim of self-defense may have been proper as to the intentional murder charge against the defendant in that case. We expressly noted that "[e]ven if we were to assume without deciding that this evidence, viewed in the context of all the evidence regarding the killing of the victims, would have permitted a rational jury to find self-defense without resorting to speculation, the defendant was not entitled to an instruction on that theory of defense because he was engaged in robbing the victims when his purported justification for killing them arose." Id., 811–12.

In *United States* v. *Thomas*, 34 F.3d 44, 48 (2d Cir. 1994), the United States Court of Appeals for the Second Circuit held that "[o]ne who commits or attempts a robbery armed with deadly force, and kills the intended victim when the victim responds with force to the robbery attempt, may not avail himself of the defense of self-defense." The defendant in *Thomas* had argued that the United States District Court improperly omitted a portion of the jury charge regarding the burden of proof in a claim of self-defense, and the Court of Appeals concluded that "even if the charge failed to place the burden on the government, there was no reversible error . . . because, given the jury's finding that the defendants committed the killing of [the victim] in an attempt to rob him, the defendants were not entitled, as a matter of law, under the circumstances, to rely on the defense of self-defense." Id., 47–48. Thus, "[t]he [District Court's] failure to make clear that the burden on the issue of self-defense rests on the government [could not] have prejudiced the defendants when they

had no right to have the jury consider the issue at all."
Id., 48.

Other jurisdictions also have denied "a self-defense claim where the defendant was a participant in a felony and committed the homicidal act during the course of the felony." P. Robinson, Criminal Law Defenses (1984), § 132, p. 99; see, e.g., *Street* v. *Warden*, 423 F. Sup. 611, 613–14 (D. Md. 1976) (self-defense unavailable as matter of law because conviction rested on felony murder); *State* v. *Celaya*, 135 Ariz. 248, 254, 660 P.2d 849 (1983) (accused cannot use defense that he brought upon himself); *Williams* v. *State*, 256 Ga. 655, 658, 352 S.E.2d 756 (1987) (self-defense not defense to felony murder); *Street* v. *State*, 26 Md. App. 336, 339–40, 338 A.2d 72 (1975) (self-defense unavailable as matter of law because engaged in robbery); *People* v. *Stephens*, 84 Mich. App. 250, 254, 269 N.W.2d 552 (1978) (self-defense is not defense to felony murder); *Layne* v. *State*, 542 So. 2d 237, 243 (Miss. 1989) (self-defense unavailable to person charged with felony murder); *People* v. *Guraj*, 105 Misc. 2d 176, 178, 431 N.Y.S.2d 925 (1980) (person engaged in attempted robbery without ambit of justification defense); *State* v. *Bell*, 338 N.C. 363, 387, 450 S.E.2d 710 (1994) (defendant forfeited right to self-defense as defense to felony murder); *Smith* v. *State*, 209 Tenn. 499, 503, 354 S.W.2d 450 (1961) (person engaged in committing felony cannot escape conviction through claim of self-defense).

The defendant argues that a bright line rule that self-defense is not available, based simply on the state's accusation that a defendant committed felony murder, violates the fundamental principle that all defendants are presumed innocent until proved guilty beyond a reasonable doubt. We disagree. Our holding is premised on the fact that a finding, and not an accusation, of felony murder is incompatible with the defense of self-defense. Our rule as to self-defense assumes that the

jury concluded that the defendant was in the course of and in furtherance of attempted robbery when the murder occurred. If the jury concluded that the defendant was not committing a felony at the time of the murder, the jury was instructed to find the defendant not guilty of felony murder. Our holding today does not violate the presumption of innocence.

Finally, our holding is consistent with the purpose underlying felony murder, which is "to punish those whose conduct brought about an unintended death in the commission or attempted commission of a felony. . . . The felony murder rule includes accidental, unintended deaths. Indeed, we have noted that crimes against the person like robbery, rape and common-law arson and burglary are, in common experience, likely to involve danger to life in the event of resistance by the victim . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Kyles*, 221 Conn. 643, 667, 607 A.2d 355 (1992). Accordingly, when one kills in the commission of a felony, that person cannot claim self-defense, for "this would be fundamentally inconsistent with the very purpose of the felony murder [statute]." *People* v. *Loustaunau*, 181 Cal. App. 3d 163, 170, 226 Cal. Rptr. 216 (1986).

In the present case, the jury reasonably found that the defendant was engaged in the attempted robbery of the victims when the shootings occurred. The evidence indicated that the defendant arrived at the victims' house, armed with a nine millimeter handgun, with the intention of regaining his cocaine. After the defendant accused the victims of having his cocaine, and both denied having the drugs, the defendant began shooting. The jury could, and did, find that the shootings were in the course of and in furtherance of an attempted robbery. The defendant's testimony that the victims first utilized physical force does not require that he have a defense of self-defense. For purposes of felony murder,

"it is immaterial whether the victim of the [felony] or the defendant [first utilizes physical force]." *State* v. *Bell,* supra, 338 N.C. 387. It is inconsistent with the purpose of the felony murder statute to allow a defendant who causes a death in the course of a felony to claim self-defense because the victim attempted to thwart such a felony.

The judgment of the Appellate Court is reversed insofar as it reversed the trial court's judgment convicting the defendant of murder and capital felony and is affirmed in all other respects, and the case is remanded to the Appellate Court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.