# STATE OF CONNECTICUT *v.* NELSON RAMOS
## (AC 20921)

Lavery, C. J., and Schaller and Stoughton, Js.

Argued February 14—officially released July 9, 2002

*Kent Drager*, senior assistant public defender, with whom, on the brief, were *Andrea N. Mosley* and *Matthew Stachowske*, certified legal interns, for the appellant (defendant).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Vernon Oliver* and *William Watson III*, deputy assistant state's attorneys, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Nelson Ramos, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2)[1] and carrying a weapon in a motor vehicle in violation of General Statutes (Rev. to 1997) § 29-38.[2] On appeal, the defendant claims that (1) there was insufficient evidence to sup-

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

[2] General Statutes (Rev. to 1997) § 29-38 provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

port his conviction of the two charges, (2) the trial court improperly refused to instruct the jury that self-defense was applicable to the charge of carrying a weapon in a motor vehicle, (3) if self-defense does not apply to that charge, then in the circumstances of this case, § 29-38 violates the defendant's right to bear arms as guaranteed by article first, § 15, of the constitution of Connecticut, (4) the trial court improperly instructed the jury regarding self-defense as it related to the charge of assault in the second degree and (5) the trial court improperly instructed the jury regarding intent with respect to the charge of assault in the second degree.[3] We reverse in part and affirm in part the judgment of the trial court.

The jury reasonably could have found the following facts. In October, 1998, the victim, Emil Szymczak, was employed as the superintendent of an apartment building at 38 Main Street in New Britain. As part of his duties, Szymczak collected rent payments from tenants. On the evening of October 5, 1998, as he drove his car into the parking lot behind the apartment building, Szymczak saw the defendant, who resided in the building, sitting in a motor vehicle. Prior to that evening, Szymczak had attempted, without success, to collect overdue rent payments from the defendant. Szymczak walked to the defendant's vehicle and, through the open operator's side window, asked the defendant about the overdue rent. In response, the defendant handed Szymczak a piece of paper that presumably indicated that he was waiting for money from the state. As Szymczak was reading the paper, the defendant picked up a twenty ounce hammer that was in the vehicle and forcefully struck Szymczak with it twice on the forehead. Szymczak grabbed the hammer and struggled with the defendant for control of it. William Colon, a resident of the

---

[3] We have recited these claims in the order in which we will address them, rather than in the order in which they are presented in the defendant's brief.

apartment building who witnessed the incident, called the New Britain police after both men called out to him to do so.

When the police arrived at the scene, the defendant and Szymczak were still struggling for control of the hammer. Szymczak then let go of the hammer, and Officer Brian Pearson ordered the defendant to put the hammer down. Pearson had to repeat this order three or four times before the defendant complied. Pearson also ordered the defendant to exit his vehicle. After exiting his vehicle, the defendant told Pearson that Szymczak had asked him for rent money, that he did not have as much as Szymczak wanted, and that when Szymczak kept asking for the money he hit Szymczak twice with the hammer. At that time, the defendant stated that he had not been threatened by Szymczak.

As a result of the altercation, Szymczak appeared "dazed and pale" and he suffered two bloody, golf ball-sized welts on his forehead. Despite his condition, Szymczak refused medical assistance because he said he had no health insurance and could not afford to pay for treatment. At the time of the trial, he testified that he still suffered headaches and had numbness in his arms as a result of being struck with the hammer.

The defendant subsequently was arrested and charged in a four count information with attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), assault in the second degree in violation of § 53a-60 (a) (2), carrying a dangerous weapon in violation of General Statutes (Rev. to 1997) § 53-206 and carrying a weapon in a motor vehicle in violation of § 29-38. At the conclusion of the state's case, the defendant filed a motion for a judgment of acquittal as to all counts. The court granted the defendant's motion as to the first count, attempt to commit assault in the first degree, and

the third count, carrying a dangerous weapon. With respect to the first count, the court concluded that the state had failed to present evidence that would support a finding by the trier of fact that the defendant intended to cause serious physical injury to the victim. With respect to the third count, the court concluded that there was no evidence that the defendant, at any time, had the hammer on his person. After the completion of the trial, the jury convicted the defendant of the two remaining counts. The court sentenced the defendant to two concurrent sentences of five years, execution suspended, with five years probation. This appeal followed.

I

The defendant first claims that the evidence presented at trial was insufficient to support his conviction of assault in the second degree and carrying a weapon in a motor vehicle. We agree with the defendant only as to his conviction of carrying a weapon in a motor vehicle.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable

doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 224–25, 733 A.2d 156 (1999).

A

The defendant first claims that the evidence was insufficient to support his conviction of assault in the second degree. Specifically, the defendant contends that the state failed to prove that the hammer, under the circumstances in which it was used, was capable of causing death or serious physical injury and, therefore, it failed to prove, as it was required to, that the hammer, as actually used, was a dangerous instrument. We are not persuaded.

To prove the defendant guilty of assault in the second degree pursuant to § 53a-60 (a) (2), the state was required to prove beyond a reasonable doubt that the defendant, with intent to cause physical injury to Szymczak, caused such injury to Szymczak by means of a dangerous instrument.[4] General Statutes § 53a-3 (7) defines "dangerous instrument" in relevant part as "any instrument . . . which, under the circumstances in which it is used . . . is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (4), in turn, defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impair-

[4] The state asserted that the defendant caused physical injury to Szymczak by means of a dangerous instrument, namely, a hammer.

ment of health or serious loss or impairment of the function of any bodily organ . . . ."

As previously indicated, the state charged the defendant with attempt to commit assault in the first degree in violation of §§ 53a-59 (a) (1) and 53a-49 (a) (2). Section 53a-59 (a) (1) requires, inter alia, proof of "intent to cause serious physical injury to another person . . . by means of a deadly weapon or a dangerous instrument . . . ." In granting the defendant's motion for a judgment of acquittal as to the charge of attempt to commit assault in the first degree, the court found that the state failed to present evidence that would support a finding that the defendant intended to cause serious physical injury to the victim. The defendant claims on the basis of that finding and the fact that the court's jury charge on self-defense did not include an instruction on justification for the use of deadly physical force, that the court determined that the hammer was not used in a manner that was capable of causing serious physical injury. This claim is entirely without merit.

The fact that the court concluded that the evidence was insufficient to establish that the defendant intended to cause serious physical injury to the victim does not foreclose a finding by the jury that the hammer as used was capable of causing serious physical injury. Proof of intent to cause serious physical injury is quite different from proof that a hammer is capable of causing serious physical injury. A conclusion that the hammer, when used to strike the victim on the head, was not capable of causing serious physical injury would have been truly astonishing.[5]

---

[5] We note that during argument on the motion for a judgment of acquittal, defense counsel stated the following: "I think the way [the hammer] was used is certainly a dangerous instrument and that is why there's the charge of assault in the second degree and not assault in the third degree. . . .

\* \* \*

"I'm not saying it wasn't used as a dangerous instrument, again, that is why assault second is charged. . . .

\* \* \*

"Under § 53a-3 (7), in order for an instrument to be considered dangerous, it need only be used in a manner capable of causing serious injury under the circumstances" and, therefore, "[t]he facts and circumstances need show only that the general way in which the object was used could *potentially* have resulted in serious physical injury." (Emphasis added.) *State* v. *Green*, 38 Conn. App. 868, 880–81, 663 A.2d 1085 (1995). We conclude that the evidence was sufficient to establish that the hammer, as used, was a dangerous instrument. Accordingly, the evidence was sufficient to support the defendant's conviction of assault in the second degree.

B

The defendant also claims that the evidence was insufficient to support his conviction of carrying a weapon in a motor vehicle. We agree.

Section 29-38 prohibits a person from carrying in a motor vehicle any weapon specifically named in the statute or "any other dangerous or deadly weapon or instrument" without a permit or registration. Experience has shown, and cases have recognized, that an almost infinite number of seemingly innocuous implements can, by the circumstances and manner of their use, become dangerous instruments. See, e.g., *State* v. *Prat*, 66 Conn. App. 91, 102–103, 784 A.2d 367 (2001) (baseball bat); *State* v. *Pierce*, 64 Conn. App. 208, 214, 779 A.2d 233 (2001) (crowbar); *State* v. *Barnett*, 53 Conn. App. 581, 591, 734 A.2d 991 (metal vacuum cleaner pipe, screw driver, ice pick, two by four, cane, scissors, television antenna), cert. denied, 250 Conn. 918, 738 A.2d 659 (1999); *State* v. *Rozmyslowicz*, 52 Conn. App. 149, 154, 726 A.2d 142 (1999) (steak knife). A hammer is just such an innocuous implement that is not considered a dangerous instrument unless it is

"It was not being carried as a dangerous instrument, did not become a dangerous instrument until it was used."

intended to be used as such. See *State* v. *Killenger*, 193 Conn. 48, 55, 475 A.2d 276 (1984). Accordingly, it is not a crime to have a hammer in a motor vehicle unless it is intended to be used as a dangerous instrument or for some other illicit purpose.

In the present case, there was no evidence to suggest that the defendant ever intended to use the hammer to strike the victim until the moment he did so. While it is true that intent may be formed in an instant; see *State* v. *Cooper*, 227 Conn. 417, 444, 630 A.2d 1043 (1993); there is no evidence that the defendant was carrying the hammer in his vehicle with the intent to use it as a dangerous instrument. Accordingly, we conclude that there was insufficient evidence to support the defendant's conviction of carrying a weapon in a motor vehicle.

## II

The defendant next claims that the trial court improperly refused to instruct the jury that self-defense was applicable to the charge of carrying a weapon in a motor vehicle. Because we concluded in part I of this opinion that there was insufficient evidence to support the defendant's conviction of carrying a weapon in a motor vehicle, it is unnecessary for us to address this claim.[6]

---

[6] The defendant further claims that it is reasonably possible that the court's failure to instruct the jury that self-defense is a defense to the charge of carrying a weapon in a motor vehicle misled the jury in its evaluation of self-defense as it related to the charge of assault in the second degree. In a rather convoluted argument, the defendant contends that because the court in its instructions on the charge of carrying a weapon in a motor vehicle informed the jury that possession and use of the hammer as a dangerous instrument was illegal, the jury may have been misled into concluding that "it would not be reasonable to use an illegal weapon in defense of oneself." We reject the defendant's argument as speculative and wholly without merit because there is absolutely no indication that the court's instructions on self-defense were in any way misleading as to this issue.

The defendant also claims that, if self-defense does not apply to the charge of carrying a weapon in a motor vehicle, then, in the circumstances of this case, § 29-38 violates his right to bear arms as guaranteed by article first,

III

The defendant next claims that the court improperly instructed the jury regarding self-defense in relation to the charge of assault in the second degree. Specifically, the defendant claims that, in its instructions on self-defense, the court improperly instructed the jury, in effect, that the defendant's use of nondeadly physical force would be justified only if the defendant believed that the use of such force was "unavoidable."

The defendant concedes that this claim was not properly preserved at trial. He maintains, however, that his claim is reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] We will review this claim because the record is adequate for review and an allegation of an improper jury instruction on an element of self-defense is of constitutional dimension. See *State* v. *Ash*, 231 Conn. 484, 493, 651 A.2d 247 (1994). We conclude, however, that the alleged constitutional violation did not clearly exist and did not clearly deprive the defendant of a fair trial and, therefore, the defendant's claim fails under the third prong of *Golding*.

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of

§ 15, of the constitution of Connecticut. In view of our conclusions in parts I and II of this opinion, it is unnecessary for us to address this claim.

[7] Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." (Internal quotation marks omitted.) *State* v. *Amado*, 254 Conn. 184, 194, 756 A.2d 274 (2000).

The court instructed the jury that "a person is justified in the use of reasonable physical force upon another person when he reasonably believes that such force is necessary to protect himself from . . . the imminent use of force" by another person. The court explained that General Statutes § 53a-19, insofar as it is applicable to this case, provides that "a person is justified when using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the . . . imminent use of physical force and he may use such degree of force which he reasonably believes to be necessary for such purpose." The court further explained that there "need not be an actual threat or an assault. The test is not what the other person actually intended, but what the aggressor's act caused the defendant . . . to reasonably believe . . . was his intention . . . ." The court then stated: "In other words, the danger need not have been actual

if the defendant reasonably believed that the danger was actual, real, imminent or *unavoidable*." (Emphasis added.) The defendant claims that the court's inclusion of the word "unavoidable" in its charge may have misled the jury.[8] We are not persuaded.

"It is generally agreed that one who can safely retreat is not required to do so before using *nondeadly* force in self-defense." (Emphasis in original.) *State* v. *Anderson*, 227 Conn. 518, 529, 631 A.2d 1149 (1993). Indeed, § 53a-19[9] contains no such requirement to justify the use of nondeadly physical force in self-defense. It is the use

---

[8] We note that the defendant did not take exception to this portion of the court's instruction at trial and, in fact, included the quoted language in his request to charge.

[9] General Statutes § 53a-19 provides: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

of deadly physical force which is not justified if the necessity for using it can be avoided with complete safety by retreating, by surrendering property claimed by the other or by complying with certain demands. See footnote 9.

In the present case, the court used the word "unavoidable" in its instructions on self-defense in explaining to the jury that the danger faced by the defendant need not be real if the defendant reasonably believed that it was "actual, real, imminent or unavoidable." It did not charge the jury that the defendant's use of physical force was justified only if he believed that use of such force was unavoidable, and, in expressing his claim in this way, the defendant has misstated the court's instructions on self-defense by taking a portion of the instructions out of context. Indeed, the court did not instruct the jury that the defendant had a duty to avoid the use of physical force by retreating, giving up property or acceding to demands if it could be avoided with complete safety. The word "unavoidable" was used in describing the danger perceived by the defendant, not the necessity for the use of force.

We conclude that it is not reasonably possible that the jury was misled by the court's single use of the word "unavoidable" in its instructions on self-defense. Accordingly, the defendant's claim fails under the third prong of *Golding*.

IV

The defendant's final claim is that the court improperly instructed the jury regarding intent by reading the entire definition of intent set forth in General Statutes § 53a-3 (11),[10] including a portion which is not relevant

[10] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

to the charge of assault in the second degree. He claims that it was reasonably possible that the jury was misled by the court's improper instruction.

Although the defendant concedes that this claim was not properly preserved at trial, he again maintains that his claim is reviewable pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We will review this claim because the record is adequate for review and an allegation of an improper instruction on an element of an offense is of constitutional dimension. See *State* v. *Brown*, 259 Conn. 799, 806, 792 A.2d 86 (2002).

As previously stated, the standard of review for a claim of an improper instruction on an element of an offense is whether it is reasonably possible that the jury was misled. *State* v. *Amado*, supra, 254 Conn. 194.

The court instructed the jury on intent, in part, as follows: "A person is guilty of assault in the second degree when with the intent to cause physical injury to another person he causes such injury by means of a dangerous instrument or deadly weapon. . . . The first element is intent to cause physical injury. You must be satisfied that the defendant intended to cause physical injury to his victim, that is, Mr. Szymczak. This raises the issue of the defendant's intent, that's an important word as to that first element, and our statute provides that a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or engage in such conduct. Intentional conduct is conduct that is purposeful rather than conduct that is accidental or inadvertent.

\* \* \*

"Now the term 'physical injury'—remember I just said that the first element is an intent to cause physical injury—so physical injury the meaning of that is

important. What it means is, under our statute, the impairment of physical condition or pain. No particular degree of the impairment of one's physical condition and no particular degree of pain is required, but that's an element, intent to cause physical injury which includes pain . . . ."

The court later instructed the jury that to convict the defendant of assault in the second degree, "the burden of the state is to prove beyond a reasonable doubt the following elements: One, that the defendant had the intent to cause physical injury to another person, Mr. Szymczak; two, that he did cause that physical injury; three, that he did so by the use of a dangerous instrument, in this case we're talking about the hammer; and fourth, that he was not acting in self-defense. . . . So if you find that the state has proven all of these elements of assault in the second degree beyond a reasonable doubt—and let me just review them just one last time. In order for you to find the defendant guilty of assault in the second degree, you must find, one, that the defendant had the intent to cause physical injury to another person; that he caused physical injury; and that he did so by using a dangerous instrument; and that the defendant was not, at the time, acting in self-defense. If you find that the state has proven all of those elements beyond a reasonable doubt, then your verdict would be guilty on this count. If, however, you do not find all of the elements proven beyond a reasonable doubt, your verdict would be not guilty."

We agree with the defendant that the portion of the statutory definition of intent relating to intent to engage in proscribed conduct is not relevant to the charge of assault in the second degree, and, therefore, the issue is whether it is reasonably possible that the jury was misled by the court's reference to that portion of the definition. We conclude that it was not.

The defendant claims that the present case is indistinguishable from *State* v. *DeBarros*, 58 Conn. App. 673, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000), in which this court reversed the defendant's murder conviction on the basis of an improper jury instruction. In *DeBarros*, the trial court read the entire statutory definition of intent to the jury, including an improper reference to intent to engage in proscribed conduct. This court determined that "[i]t is reasonably possible that the jury was misled because the probable effect of the improper charge was that it guided the jury to an incorrect verdict. The trial court not only improperly read the intent to 'engage in conduct' language in its initial and two supplemental charges, it also improperly referred back to that language seven times throughout its instructions to the jury." Id., 682–83. In *DeBarros*, "the trial court's improper instructions were too numerous to be rectified by the court's proper instructions. In total, the court either read or referred back to the improper instruction ten times." Id., 683.

This court recently examined a similar issue in *State* v. *Rodriguez*, 63 Conn. App. 529, 777 A.2d 704, cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001). In that case, the state charged the defendant with murder. During its charge, the court improperly referred to intent to engage in proscribed conduct twice within the same sentence. "The instruction, however, properly referred to the intent to cause a result, death, on five occasions, twice when reading the statutory definition of [General Statutes] § 53a-54a (a) and three additional times as a prerequisite to finding the defendant guilty of the crime charged." *State* v. *Rodriguez*, supra, 535. The court in *Rodriguez* therefore determined that it was not reasonably possible that the charge misled the jury.

The improper instruction in this case is more analogous to that of *Rodriguez* than *DeBarros*. Here, the trial court improperly referred to intent to engage in

proscribed conduct only once in its instructions. Moreover, its instructions properly referred to the intent to cause a result, physical injury, on six occasions. Accordingly, we conclude that it is not reasonably possible that the jury was misled by the court's instructions.

The judgment is reversed only as to the conviction of carrying a weapon in a motor vehicle and the case is remanded with direction to render judgment of not guilty of that crime and to vacate the portion of the defendant's sentence associated with that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.